UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL AVILA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BANK OF AMERICA, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-00222-HSG<br><br>**ORDER RE MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 32, 35, 39 |

Pending before the Court are the motions to dismiss filed by Defendants Bank of America, N.A., Ocwen Loan Servicing, LLC, Caliber Home Loans, Inc., and U.S. Bank Trust, N.A, respectively. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the motions are **GRANTED**.

## I.　ALLEGATIONS

Plaintiff Miguel Avila alleges that in 2008 he purchased a neighbor's property located at 36823 Olive Street, Newark, California, 94560 (the "Property"), that was in foreclosure, with the intention of assuming the mortgage loan and obtaining possession of and title to the Property. Dkt. No. 30 ("FAC") ¶¶ 13–16. He contacted the then-mortgage owner, Countrywide Home Loans, who said that to do so, Plaintiff would have to assume his neighbor's mortgage on the Property or obtain a new one. *Id.* ¶ 15. Countrywide informed Plaintiff that before he could do either, he had to reinstate the mortgage loan. *Id.* In June 2008, Plaintiff states that he tendered the money necessary to reinstate the loan and moved into the Property. *Id.* ¶ 16. Plaintiff never received the assumption or new loan documents from Countrywide, though he paid the monthly mortgage payments in the interim. *Id.* ¶¶ 17–18.

In early 2009, Plaintiff learned that Defendant Bank of America ("BANA") had taken over

the mortgage. *Id.* ¶ 19. Plaintiff contacted BANA and a representative told him to continue making payments and BANA would send the requisite paperwork. *Id.* ¶¶ 20–21. When months went by and Plaintiff did not receive paperwork to either assume or refinance the loan, he contacted BANA again, who told him to keep making payments and it would send him the paperwork. *Id.*¶¶ 22–23. At one point, having grown frustrated with the delay, Plaintiff told BANA that "he would be getting an attorney to help him remedy the situation." *Id.* ¶ 25. According to Plaintiff, "almost immediately in response to this" in August 2012, BANA transferred servicing of the loan to Defendant Ocwen. *Id.* ¶ 25. Plaintiff then informed Ocwen that he would not wait for it to remedy the loan modification issue and "would seek legal representation." *Id.* ¶ 27. In response, Ocwen informed Plaintiff that "its records showed the loan account had not been paid since 2008." *Id.* Thereafter, Ocwen sent Plaintiff's mortgage payments back because they were insufficient to satisfy the outstanding debt. *Id.*

Servicing of the loan "eventually" transferred to Defendant Caliber, and in October 2015, BANA transferred its interest in the Deed of Trust to Defendant U.S. Bank with the help of Caliber. *Id.* ¶¶ 28–29. Around this time, Plaintiff contacted Caliber about applying for a loan modification. *Id.* ¶ 30. Plaintiff provided the requisite loan modification documents, but in late November or early December 2015, Caliber said it had never received the application. *Id.* In December 2015, Caliber recorded a Notice of Default on the Property. *Id.*

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 570, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 555. Rather, the plaintiff must allege facts sufficient to "raise a right to relief

above the speculative level." *Id.*

**III. DISCUSSION**

Plaintiff asserts numerous claims against the four Defendants in this action based on his inability to assume or refinance the mortgage loan on the Property. The Court addresses the claims against each Defendant separately.[1]

**A. Bank of America**

**i. Statute of Limitations (Claims I–III, & VII)**

BANA argues that Plaintiff's fraud, negligent misrepresentation, conversion, and Unlawful Competition Law ("UCL") claims against it are time-barred. The Court agrees. The factual basis for all four claims against BANA is that it told Plaintiff he could assume or refinance the loan, that he should continue making monthly mortgage payments, and BANA accepted those payments without sending Plaintiff the requisite paperwork. *See* FAC ¶¶ 42–50, 65–72, 82–91, 128. According to Plaintiff's complaint, however, BANA transferred servicing of the loan to Ocwen "in or around August 2012." *Id.* ¶ 26. At that time, Plaintiff still had not received any paperwork, despite having made mortgage payments on the Property for several years. *Id.* ¶¶ 17–18, 20–23. Moreover, Ocwen informed Plaintiff that according to its records, the loan had not been paid since 2008. *Id.* ¶ 27.

By then, Plaintiff's causes of action against BANA had accrued. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (Cal. 2005) ("[A] cause of action accrues at the time when the cause of action is complete with all of its elements.") (quotation omitted). Even putting aside whether Plaintiff should have been on notice of his claims during the several years in which he made monthly mortgage payments but did not receive any paperwork from BANA, Plaintiff was undoubtedly put on notice once Ocwen told him that its records showed that the loan had not been paid since 2008. FAC ¶¶ 22–26; *cf. Fox*, 35 Cal. 4th at 807 ("[W]e look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."); *Norgart v. Upjohn*

---

[1] Because the Court does not rely on any of the exhibits attached to the parties' Requests for Judicial Notice in its analysis, *see* Dkt. Nos. 33, 35-1, 40, 43, 45-1, 46-1, the Court **DENIES** the requests as moot.

3

*Co.*, 21 Cal. 4th 383, 398 (Cal. 1999) ("[A plaintiff] has reason to suspect [wrongdoing] when he has notice or information of circumstances to put a reasonable person on inquiry.") (quotation omitted). Yet Plaintiff did not file his initial complaint until December 19, 2016, over four years after this correspondence with Ocwen. Dkt. No. 1-1. All four claims are therefore barred by the applicable statute of limitations. *See* Cal. Code Civ. P. § 338(d) (three-year limitation for fraud), Cal. Code Civ. Proc., § 339(1) (two-year limitation for negligence and three-year for fraud); Cal. Code Civ. Proc., § 338(c) (three-year limitation for conversion); Cal. Bus. & Prof. Code § 17208 (four-year limitation for UCL violation).

Plaintiff's contention that the discovery rule, the fraudulent concealment doctrine, and the continuous accrual doctrine should toll these statutes of limitations is unavailing. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 807. Consequently, "the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Id.* at 809. Relatedly, under the fraudulent concealment doctrine, "[a] defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which *the claim* is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (Cal. 1994) (en banc) (quotation omitted). The continuous accrual doctrine does not toll a statute of limitations, but a court will view a "series of wrongs or injuries . . . as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (Cal. 2013).

As discussed above, Plaintiff was put on notice as of August 2012 that the loan had not been reassigned and his payments had not been applied to the existing loan. Plaintiff does not allege that BANA committed any additional fraudulent or unlawful acts after 2012 that would extend the statutes of limitations for these claims. Plaintiff does not allege that he had any further correspondence with BANA or that he sent it further mortgage payments following the transfer to

4

Ocwen in August 2012. *Cf.* FAC ¶ 42 ("For years, between 2008 and 2012, Plaintiff was informed by [BANA] representatives that he should continue paying the loan and await the assumption or application paperwork . . . ."). Plaintiff states that in August 2012, he began sending monthly payments to *Ocwen*, which returned them as insufficient. FAC ¶ 27. Even if BANA had tried to conceal its misrepresentations, Ocwen informed Plaintiff about the state of the loan.

Plaintiff's suggestion that the continuous accrual doctrine renders BANA's failure to send paperwork to Plaintiff actionable until October 2015 when it transferred its interest in the Deed of Trust to U.S. Bank is similarly unpersuasive. BANA's allegedly wrongful conduct occurred between 2008 and 2012 when BANA representatives told Plaintiff to pay the loan and await paperwork to assume or refinance the loan. *See, e.g.*, FAC ¶¶ 42, 65, 82. And Plaintiff's resulting injury — the loss of the mortgage payments and the specter of foreclosure — has remained constant since that time. Plaintiff could have filed suit upon learning from Ocwen that the loan was unpaid since 2008. These claims are accordingly **DISMISSED**.

### ii. Fraudulent Transfer (Claim VI)

Plaintiff alleges that BANA transferred its interest in the Property's Deed of Trust to U.S. Bank in October 2015 "with actual intent to hinder, delay, or defraud Plaintiff," in violation of California's Uniform Voidable Transactions Act ("UVTA"). *See* FAC ¶¶ 117–25; *see also* Cal. Civ. Code § 3439.04. Under UVTA, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). In order to state a claim, however, it is not enough to plead "[m]ere intent to delay or defraud." *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (Cal. Ct. App. 2001). Rather, "injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential." *Id.* Injury in this context means "the transfer puts beyond [Plaintiff's] reach property [he] otherwise would be able to subject to the payment of [his] debt." *Id.*

According to Plaintiff, he was a creditor of BANA's at the time BANA transferred its

interest in the Deed of Trust because he "had a contingent claim for damages against [BANA]" based on this pending action and his claims for fraud, negligent misrepresentation, and conversion. FAC ¶ 115. Plaintiff has failed to establish an essential element of his claim — that the allegedly fraudulent conveyance injured him. Here, Plaintiff is only seeking monetary damages. *See id.* ¶¶ 124–25 (seeking actual and punitive damages). Plaintiff has not alleged that the transfer made BANA insolvent or otherwise unable to pay Plaintiff any damages to which he may be found entitled. Consequently, even if the Court assumes Plaintiff may be able to overcome the statute of limitations issues discussed above and state a claim for fraud, misrepresentation or conversion in an amended complaint, Plaintiff could still recover monetary damages against BANA, despite the transfer of interest in the Deed of Trust to U.S. Bank. *See Mehrtash*, 93 Cal. App. 4th at 80. The claim is accordingly **DISMISSED**.

### B. Ocwen

#### i. Statute of Limitations (Claim V)

Like BANA, Ocwen argues that Plaintiff's claim against it for intentional interference with prospective economic relations is barred by the two-year statute of limitations. *See* Cal. Code Civ. P. § 339. Although Plaintiff does not clearly identify the factual basis for this claim in the complaint, it appears from Plaintiff's opposition to the motion to dismiss, that Ocwen allegedly interfered with Plaintiff's prospective relationship with BANA by assuming the servicing of the loan and not accepting Plaintiff's mortgage payments. *See* FAC ¶¶ 108–10; Dkt. No. 44 at 7. Both events occurred in August 2012. *See* FAC ¶¶ 26–27.

Plaintiff attempts to overcome this timeline by arguing that each time Ocwen rejected a payment, a separate statute of limitations was triggered under the continuous accrual doctrine. Yet Plaintiff has not cited — nor could the Court identify — a single instance in which a California court applied the continuous accrual doctrine to an intentional interference claim. *Accord DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 949 (C.D. Cal. 2013); *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 952 (N.D. Cal. 2010).

Moreover, Plaintiff's complaint contains only vague, at times even contradictory, allegations of "continuous" interference with economic relationships. First, Plaintiff has not

alleged any duty or obligation for Ocwen to accept payment from Plaintiff. *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (Cal. 2013) ("[A]ccrual applies whenever there is a continuing or recurring obligation."). Rather, according to Plaintiff's own account, he had not been able to assume or modify the loan and Ocwen said its records showed that the account had not been paid since 2008. *See* FAC ¶¶ 23–27. Second, Plaintiff does not allege that Plaintiff attempted to pay Ocwen within the two-year statute of limitations. Plaintiff's vague assertion that "Ocwen began sending Plaintiff's payments back" is insufficient to invoke the continuous accrual doctrine. The Court finds that this claim is barred by the statute of limitations and is therefore **DISMISSED**.

### ii. UCL (Claim VII)

Plaintiff's UCL claim, brought against "all Defendants," is premised on "Defendants' fraud in violation of Civil Code [] § 1709, negligent misrepresentations to Plaintiff in violation of California Civil Code § 1710(2), fraudulent transfer of the Deed of Trust secured by Plaintiff's property in violation of California Civil Code § 3439, and Defendants' conversion of Plaintiff's money." FAC ¶ 128. Yet Plaintiff does not allege that Ocwen engaged in fraud, negligent misrepresentation, fraudulent transfer, or conversion. Plaintiff cannot rewrite its complaint now in its opposition to the motion to dismiss to clarify that the UCL claim against Ocwen is actually based on the intentional interference claim. *Cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."). The Court further cautions Plaintiff that for an intentional interference claim to support a UCL claim, Plaintiff must clearly allege the factual basis for each element, including what unlawful conduct Ocwen engaged in that interfered with Plaintiff's relationship with BANA. *See San Jose Construction, Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1544–1545 (Cal. Ct. App. 2007) ("[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard . . . [A]n act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive.") (quotation omitted). Plaintiff's UCL claim against Ocwen is **DISMISSED**.

**C. U.S. Bank and Caliber**

    **i. Fraudulent Transfer (Claim VI)**

Plaintiff also brings an UVTA claim against U.S. Bank and Caliber. Plaintiff alleges that U.S. Bank and BANA have "an ongoing and continuing relationship" and Caliber acted as BANA's agent as part of this "fraudulent transaction." FAC ¶¶ 12, 120, 123. Consequently, Plaintiff suggests that U.S. Bank and Caliber were "co-conspirator[s] and/or joint venturer[s]." *See id.* ¶¶ 120, 123.

As discussed above in Section III.A.ii, this claim fails because Plaintiff does not identify an injury from the transfer to U.S. Bank. This claim fails for the additional reason that Plaintiff has not adequately alleged that U.S. Bank and Caliber acted as co-conspirators or joint venturers with BANA. To allege a conspiracy, a plaintiff must plead: "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (Cal. 2006). And a joint venture requires: (1) an intent to become partners; (2) a community of interest in the undertaking; (3) an understanding to share profits and losses; and (4) equal authority and right to direct and control the conduct of all co-venturers with respect to the joint venture. *See 580 Folsom Associates v. Prometheus Development Co.*, 223 Cal. App. 3d 1, 18 (Cal. Ct. App. 1990).

Here, Plaintiff merely alleges that BANA had an interest in the mortgage at issue, BANA then assigned that interest to U.S. Bank in 2015, Caliber recorded the assignment on behalf of BANA and U.S. Bank, and Caliber is the current servicer of the mortgage. FAC ¶¶ 7–10, 29. This is insufficient to hold either U.S. Bank or Caliber liable as co-conspirators or joint venturers to the allegedly fraudulent transfer. The complaint is devoid of any factual allegations that the parties agreed to deceive Plaintiff by transferring BANA's interest in the loan or that they engaged in any wrongful act in furtherance of that agreement. It is not, contrary to Plaintiff's urging, "a logical inference" that Caliber "knew of the misrepresentations at hand, the threatened litigation, and Bank of America's intent to avoid liability for its misconduct" simply because it was the loan servicer at the time of the transfer. *See* Dkt. No. 45 at 7. Plaintiff must provide "more than labels and conclusions" that the transfer was the result of a conspiracy rather than standard business

practices in order to survive the motion to dismiss stage. *Twombly*, 550 U.S. at 555; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("[W]hen fraud is alleged, 'a party must state with particularity the circumstances constituting fraud . . . .'") (quoting Fed. R. Civ. P. 9(b)). Moreover, Plaintiff's assertion of agency liability against Caliber fails because Plaintiff has not alleged that Caliber acted on its own behalf in transferring BANA's interest in the Property such that the agent's immunity rule does not apply. *See Everest Inv'rs 8 v. Whitehall Real Estate Ltd. P'ship XI*, 100 Cal. App. 4th 1102, 1107 (Cal. Ct. App. 2002) ("[U]nder the long standing 'agent's immunity rule,' absent allegations that the agent was acting on its own behalf, it cannot be held liable for conspiring with its own principal."). This claim against U.S. Bank and Caliber is **DISMISSED**.

### ii. UCL (VII)

To the extent that Plaintiff's UCL claim against U.S. Bank and Caliber is derivative of the UVTA fraudulent transfer claim, *see* FAC ¶¶ 126–33, it fails for the same reasons the UVTA claim fails as discussed above. Although the complaint does not specifically allege additional grounds for Plaintiff's UCL claim, in Plaintiff's opposition to the motion to dismiss, he suggests that his UCL claim is also premised on U.S. Bank's alleged representations that Plaintiff could modify the mortgage loan. *See* Dkt. No. 45 at 8–9. He states that it was unfair and fraudulent for them to "ignore the application materials submitted and instead foreclose on the property." *Id.* at 9. Again, Plaintiff cannot amend his complaint with arguments made in his opposition brief, but regardless, the Court finds that Plaintiff's UCL claim still falls short.

The complaint merely alleges that Caliber informed Plaintiff of the documents necessary to apply for a home retention option and that it later "denied receiving [Plaintiff's] application." FAC ¶ 30. The complaint does not allege that Caliber ignored a valid application. Indeed Plaintiff concedes that he did not provide all the requisite information for home retention. *Id.* More fundamentally, Plaintiff alleges that because of Countrywide and BANA's delay, he never actually assumed or otherwise modified the loan on the Property. Plaintiff does not explain how Caliber could approve a home retention option for Plaintiff under these circumstances. The claim is therefore **DISMISSED**.

9

### iii. Declaratory Relief (IV)

Lastly, Plaintiff asserts a claim for declaratory relief against U.S. Bank and Caliber preventing them from foreclosing on the Property based on a loan amount that does not account for Plaintiff's recurring payments made from 2008 to 2012. *See* FAC ¶¶ 94–99.

As an initial matter, the Court notes this issue may be moot as the Court denied Plaintiff's ex parte application for a temporary restraining order enjoining the foreclosure sale scheduled for August 10, 2017. *See* Dkt. No. 64. Regardless, declaratory relief is not a stand-alone claim, but rather requires Plaintiff to state some other substantive basis for liability. *See* Cal. Code Civ. P. § 1060 (a court may grant declaratory relief to "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another . . . in cases of actual controversy relating to the legal rights and duties of the respective parties."). The Court has already concluded that the complaint does not adequately allege that U.S. Bank or Caliber were aware of or otherwise responsible for BANA's conduct. Because the Court has dismissed Plaintiff's other claims, the Court must also dismiss his declaratory relief claim. *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 79 (Cal. 2002) ("The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject."). This claim is thus **DISMISSED**.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motions to dismiss in their entirety. Plaintiff has 21 days to file an amended complaint if he can do so consistent with his Rule 11 obligations. Plaintiff may not add any additional Defendants or new claims.

**IT IS SO ORDERED.**

Dated: 9/20/2017

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge